# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| RACHEL CREAGER IRELAND, ON BEHALF OF HERSELF AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS; RAEVENE ADAMS, ON BEHALF OF HERSELF AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS; AND DARCEAL TOBEY, ON BEHALF OF HIMSELF AND ALL OTHER SIMILARLY SITUATED INDIVIDUALS;<br>*Plaintiffs*<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>*Defendant* | No. A-21-CV-01049-LY |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court is the United States of America's Motion to Dismiss, Dkt. 13, and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

### I.   BACKGROUND

In this case, Plaintiff Rachel Creager Ireland, on behalf or herself and all other similarly situated individuals, sues the United States of America for failing to provide unemployment benefits allowed under the Coronavirus Aid, Relief, and Economic

1

Security Act, after the State of Texas opted out of the Act. The United States moves to dismiss asserting that Plaintiffs cannot state a claim, arguing nothing in the CARES Act allows the Department of Labor, who administers the Act, to bypass the states and pay benefits directly to citizens when their states opt out. The undersigned agrees.

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141, 147 (5th Cir. 2009)).

### III.   DISCUSSION

#### A.   Background of the CARES Act

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act, 15 U.S.C. § 9001, *et seq.*, commonly denominated the CARES Act, which created new, temporary, federal unemployment insurance programs. Congress has amended the CARES Act twice since its passage for the purpose of extending the time period of its coverage. The CARES Act established Pandemic Unemployment Assistance, a temporary federal unemployment program that

provided up to seventy-nine weeks of benefits to certain individuals who were not otherwise eligible for state unemployment insurance benefits. The CARES Act states that "the Secretary shall provide to any covered individual unemployment benefit assistance while such individual is unemployed, partially employed, or unable to work for the weeks of such unemployment with respect to which the individual is not entitled to any other unemployment compensation …." 15 U.S.C. § 9021(b). "Covered individuals" are, in relevant part, those individuals who are not eligible for certain other compensation or benefits, and who are otherwise able to and available for work under state law, but are unemployed, partially unemployed, or unable or unavailable to work for certain designated reasons relating to the COVID-19 pandemic. 15 U.S.C. § 9021(a)(3).

On December 27, 2020, the unemployment provisions of the CARES Act, including PUA, were extended through March 14, 2021, by the Continued Assistance for Unemployed Workers Act of 2020, Pub. L. No. 116-260, §§ 201, 203-204, 206. On March 11, 2021, PUA and other benefits were further extended through September 6, 2021, by the American Rescue Plan Act of 2021. Pub. L. No. 117-2, §§ 9011, 9013-9014, 9016. On September 6, 2021, the temporary programs expired.

The CARES Act distributes PUA benefits through states, requiring that: "[t]he Secretary shall provide the assistance authorized under subsection (b) through agreements with States which, in the judgment of the Secretary, have an adequate system for administering such assistance through existing State agencies, including procedures for identity verification or validation and for timely payment, to the extent

reasonable and practicable." 15 U.S.C. § 9021(f)(1). The amount of unemployment compensation paid by a state for individuals such as plaintiffs, who are allegedly unemployed due to the COVID-19 pandemic is "computed under the provisions of applicable State law," 20 C.F.R. § 625.6(a), and increased by a weekly payment of either $600 or $300, depending on the time period of the unemployment, 15 U.S.C. § 9023(b)(3)(A). 15 U.S.C. § 9021(d)(2). States are in turn reimbursed for the assistance they provide and for administrative expenses: "[t]here shall be paid to each State which has entered into an agreement under this subsection an amount equal to 100 percent of … the total amount of assistance provided by the State pursuant to such agreement; and … any additional administrative expenses incurred by the State by reason of such agreement …." *Id.* § 9021(f)(2).

With respect to the PUA program, the CARES Act incorporates the regulations governing Disaster Unemployment Assistance under the Stafford Act, 42 U.S.C. § 5177(a); 20 C.F.R. Part 625, unless those regulations conflict with the CARES Act. 15 U.S.C. § 9021(h). Like the CARES Act, 15 U.S.C. § 9021(f)(1), the DUA program includes a requirement that it be administered by states through agreements with the Secretary, and that benefits are payable to individuals only for weeks in which an agreement is in place with the state. 42 U.S.C. § 5177(a). The regulations reflect these requirements, stating that "DUA is payable to an individual only by an applicable State … and … [o]nly pursuant to an Agreement entered into … with respect to weeks in which the Agreement is in effect …." 20 C.F.R. § 625.12(b)(1). Since 1977, DUA regulations have provided that an agreement with a state is

5

required in order for benefits to be payable in the state. Eligibility Requirements for Disaster Unemployment Assistance, 42 Fed. Reg. 46714 (Sept. 16, 1977) (codified at 20 C.F.R. § 625.4(b) (1977)); The Applicable State for an Individual, 42 Fed. Reg. 46716-17 (codified at 20 C.F.R. § 625.12(b)(1) (1977)); https://www.govinfo.gov/content/pkg/FR-1977-09-16/pdf/FR-1977-09-16.pdf#page=1.

On March 28, 2020, the State of Texas, entered into an agreement with DOL to pay PUA. On May 17, 2021, the Governor of Texas sent a letter to the Secretary of DOL stating that Texas would "terminate its participation in the Agreement Implementing the Relief for Workers Affected by Coronavirus Act, effective June 26, 2021." https://gov.texas.gov/uploads/files/press/O-WalshMartin202105171215.pdf. The Governor asserted that "these unemployment benefits [are] no longer necessary." *Id*. He further stated that "[t]he termination of this agreement means that Texas will opt out of … Pandemic Unemployment Assistance …." *Id*.

### B. Plaintiffs' Claims

Plaintiffs, residents of the State of Texas, allegedly lost their employment due to the COVID-19 pandemic and received PUA benefits from the State until Texas withdrew from its agreement with the Secretary and terminated its payment of PUA benefits on June 26, 2021. Plaintiffs claim on their own behalf and on behalf of other similarly situated individuals, that the Secretary is obligated to directly pay PUA benefits to covered individuals for the weeks of unemployment ending before September 6, 2021, even after the State terminated its agreement with the Secretary and its participation in the PUA program. Plaintiffs make their claims pursuant to the Little Tucker Act, 28

U.S.C. § 1346(a)(2), which permits claims for damages when the United States has a statutory obligation to pay certain monies.

Plaintiffs contend that the federal government violated 15 U.S.C. § 9021(b) when it discontinued making PUA payments to covered individuals for the weeks of unemployment ending before September 6, 2021, by virtue of the allegedly mandatory "shall" language of the CARES Act. Specifically, Plaintiffs rely on the PUA program language, "the Secretary [of Labor] *shall provide to any covered individual unemployment benefit assistance.*" 15 U.S.C. § 9021(b) (emphasis added).

### C.   Analysis

The United States argues that Plaintiffs' interpretation of the CARES Act conflicts with the plain language of the statute and their complaint should therefore be dismissed. Plaintiffs argue that Congress chose the language and structure of the PUA provision to establish mandatory federal relief to counter a nationwide economic crisis, while explicitly differentiating the PUA program from similar programs allowing states to terminate benefits. Plaintiffs acknowledge that although the Secretary was required to use states as its agents for making such payments when they were willing and able to do so, 15 U.S.C. § 9021(f)(1), they assert that ultimate payment obligation rested with the Secretary. Plaintiffs assert that nothing in the statute permitted states to withdraw from the program, let alone to nullify the Secretary's obligation through such withdrawal.

"The starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *U.S. v. Pruett*, 681 F.3d 232, 242 (5th Cir. 2012). And "[a]bsent a clearly

expressed legislative intention to the contrary, a statute's language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n*, 447 U.S. at 108; *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 384 (5th Cir. 2012) (same). "[W]hen interpreting a statute, it is necessary to give meaning to all its words and to render none superfluous." *United States v. Molina-Gazca*, 571 F.3d 470, 474 (5th Cir. 2009).

The plain language of the CARES Act states that the payment of benefits under the Act is predicated on the existence of an agreement with a state. Specifically, the Act states that "[t]he Secretary shall provide … assistance … through agreements with States …." 15 U.S.C. § 9021(f)(1). The states are responsible for "provid[ing] [the assistance] ... pursuant to such agreement," and then are reimbursed by the Secretary. *Id.* § 9021(f)(2).

Plaintiffs make much of the fact that nothing in the CARES Act permitted states to withdraw from the program. Dkt. 18, at 1. However, the CARES Act does not include a mechanism for the Secretary to pay out benefits under the Act in the absence of an agreement with the relevant state, which it clearly could have done. *See* Unemployment Compensation for Federal Employees, 5 U.S.C. § 8503(a) (containing a provision specifically addressing "compensation absent state agreements"). Moreover, Congress did not appropriate funds for the Secretary to provide benefits in the absence of state action. This shows Congress intended for the funds to solely be administered by the states. While Plaintiffs argue that the statute also does not specifically provide for a mechanism for a state like Texas to opt out,

8

Congressional intent cannot be gleaned from the absence of such a provision—especially in light of the specific language in the relevant regulations, which provided that benefits could only be provided through Agreements with the states. *Rotkiske v. Klemm*, ⎯⎯ U.S. ⎯⎯, 140 S. Ct. 355, 360-61, 205 L.Ed.2d 291 (2019) ("It is a fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" (citation omitted)). The fact that Congress did not specifically include an opt-out provision was not necessary in light of the statutory language and implementing regulations requiring an Agreement with the Secretary.

Plaintiffs rely on *Maine Cmty. Health Options v. United States*, ⎯⎯ U.S. ⎯⎯, 140 S. Ct. 1308, 1319 (2020), in support of their argument that a statement "the Secretary shall pay" in the Affordable Care Act, gave rise to a mandatory obligation to pay insurers under the Act. However, *Maine Community Health* can be distinguished from the instance case, because that case addressed the issue of whether a rider on an appropriation act impliedly repealed a statutory payment obligation found in the statute. The Supreme Court held that it did not because, in part, "a mere failure to appropriate does not repeal or discharge an obligation to pay." *Id.* at 1324. The case before the undersigned case does not address a failure to appropriate funds (payable to participating insurers, and not individual beneficiaries), but a failure to provide an alternative mechanism to pay funds to beneficiaries in the absence of state participation. The undersigned finds this case is not applicable, and that Congress' failure to identify an alternative payment method supports a plain reading of the statute that participation by the states is required for

9

receipt of benefits under the CARES Act, and not that Congress intended that states could not opt out of the CARES Act. The mandatory "shall" language in the CARES Act is limited to instances where the Secretary and the state enter an agreement, while the Secretary's obligation to provide payment to eligible citizens of participating states is mandatory and non-discretionary.

The DUA regulations made applicable to the PUA through 15 U.S.C, § 9021(g), "[e]xcept as otherwise provided in this section or to the extent there is a conflict" confirm that benefits are payable "only by an applicable State … and … [o]nly pursuant to an Agreement" with the state. 20 C.F.R. § 625.12(b)(1) (emphasis added). Hence, in the absence of an agreement between the State of Texas and the Secretary, the regulations support that Plaintiffs are not eligible to receive PUA payments. Because both the CARES Act, 15 U.S.C. § 9021(f), and the Stafford Act, 42 U.S.C. § 5177(a), use virtually the same language to require that programs be administered through agreements with states, and the DUA regulations simply implement that statutory requirement in the Stafford Act, 20 C.F.R. § 625.12(b)(1), the undersigned finds there is no conflict between the CARES Act and the DUA regulations pertaining to the predication of distribution of benefits on the existence of an agreement with a state.[1] Therefore, the DUA regulations that permit the payment of DUA benefits only where the applicable state has signed an agreement with the Secretary also apply to the PUA program.

---

[1] Plaintiffs identify various conflicts in the DUA regulations and the CARES Act, but none that are relevant to the issue before the undersigned. Dkt. 18, at 15.

Plaintiffs try to distinguish the DUA from the CARES Act, asserting the DUA contains permissive language allowing the executive branch to administer disaster benefits in its discretion. The undersigned finds that the distinction between the permissive and mandatory language in the differing statutes is irrelevant to the argument now before the Court. Congress specifically adopted the DUA regulations to apply to the CARES Act and implementation of the PUA, except to extent those regulations are inconsistent with the CARES Act itself. The negating conflict provided for in the statute is not between the CARES Act and the DUA, but the DUA's implementing regulations and the CARES Act. As stated above, none exists. Plaintiffs' argument with regard to this issue is without merit.

The undersigned finds that based on the plain language of the CARES Act requiring that the Secretary shall provide assistance through agreements with the states, 15 U.S.C. § 9021(f)(1), along with its intentional adoption of the DUA regulations, 15 U.S.C. § 9021(h), which specifically limit benefits payments to instances where there is an Agreement between the Secretary and the state, the "shall" language of the CARES Act does not obligate the Secretary to directly pay PUA benefits to covered individuals for the weeks of unemployment ending before September 6, 2021, in the absence of an Agreement with a state. Plaintiffs cannot state a claim under the Little Tucker Act upon which relief may be granted. Their claims are properly dismissed with prejudice.

## IV. RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** the United States of America's Motion to Dismiss, Dkt. 13, and **DISMISS WITH PREJUDICE** Plaintiffs' claims for failure to state a claim. It is **FURTHER ORDERED** that this cause of action is **REMOVED** from the docket of the undersigned.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED June 8, 2022.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE